UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JOHN RAYMON MALLOTT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 13-305-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff John Raymon Mallott ("Mallott" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 9, 10] Mallott argues that the administrative law judge ("ALJ") incorrectly found that he could effectively ambulate, failed to identify the evidence supported the residual functional capacity ("RFC") determination, did not accurately describe his limitations when posing a hypothetical question to the vocational expert ("VE"), and inappropriately assessed his credibility. As a result, Mallott seeks reversal of the ALJ's decision and an award of benefits. Alternatively, he asks for remand for further consideration of his claims. The Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Mallott.

**I.**

On February 7, 2011, Mallott applied for a period of disability and disability insurance benefits, alleging a disability beginning August 31, 2010. [*See* Administrative Transcript, pp. 162-63; hereafter, "Tr."] His applications were denied initially and upon reconsideration. [*Id.*, pp. 56-87] On June 25, 2012, an administrative hearing was held before ALJ Roger J. Reynolds in Lexington, Kentucky. [*Id.*, p. 27] Mallott appeared and testified, represented by attorney William Grover Arnett. [*Id.*] VE Joyce Forrest also testified during the hearing. [*Id.*] Mallott was thirty-eight years old at the time of the ALJ's decision. [*Id.*, p. 20] He has a tenth grade education and past work as a cabinet maker and pallet builder. [*Id.*, p. 14] At the time he applied for benefits, Mallott claimed to be disabled due to a deterioration of the spine, lower back pain, and nerve damage "on skin." [*Id.*, p. 185]

After reviewing the record and testimony presented during the administrative hearing, ALJ Reynolds concluded that Mallott suffered from the severe impairments of borderline intellectual functioning, mild obesity, degenerative disc disease with mind congenital canal stenosis and disc protrusion, right shoulder rotator cuff stenosis, and a learning disorder in reading. [*Id.*, p. 14] Notwithstanding these impairments, the ALJ determined that Mallott maintained the RFC to perform light and sedentary work, subject to the following limitations:

> no climbing of ropes, ladders, or scaffolds; occasional climbing of stairs or ramps; occasional stooping, kneeling, crouching or crawling; occasional use of the right upper extremity for pushing, pulling or overhead work. [Mallott] requires entry level work with simple repetitive 1-2-3 step procedures, no frequent changes in work routines, no requirement for detailed or complex problem solving, independent planning or the setting of goals.

[*Id.*, p. 19]

Based on the testimony of VE Forrest, ALJ Reynolds determined that Mallott could not perform past relevant work. [*Id*., p. 20] However, after considering his age, education, work experience, and RFC, the ALJ found that he could perform other work that exists in significant numbers in the national economy, such as inspector, tester, sorter, grader, labor or hand packer, and light commercial cleaner. [*Id*., p. 21] As a result, the ALJ concluded that Mallott was not disabled under the Social Security Act.

## II.

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R.§ 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education,

and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether he can perform his past work. If he can, he is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g).

## III.

### A.  Ability to Walk

Mallott first contends that the ALJ erred in determining that he could effectively ambulate. [Record No. 9-1, p. 9] He argues that the ALJ did not consider evidence demonstrating that he exhibited an antalgic gait during several examinations. [*Id.*] Thus, he claims that the ALJ should have found that he meets the criteria under Listing 1.00(B)(2)(b) of the Listing of Impairments. 20 C.F.R. pt. 404, subpt. P, app. 1, table 1, § 1.00(B)(2)(b). The Commissioner maintains that the ALJ's determination that Mallott does not meet the listing is supported by substantial evidence. [Record No. 10, pp. 4-5]

Listing 1.00(B)(2)(b) describes effective ambulation as the ability to maintain "a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." 20 C.F.R. pt. 404, subpt. P, app. 1, table 1, § 1.00(B)(2)(b). Examples of ineffective ambulation include:

> [T]he inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the

> inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

*Id*.

Dr. Terry Troutt treated Mallott from September 2010, to April 2011. According to Troutt, Mallott exhibited an antalgic gait on three occasions (September 24, 2010, December 17, 2010, and January 5, 2011). [Tr., pp. 277, 388, 401] Additionally, Dr. Jack Reed, a non-examining physician, noted that Mallott exhibited an antalgic gait. [*Id*., p. 81] However, Dr. Troutt also noted that Mallott's strength was normal ("5/5"). [*Id*., pp. 278, 382, 383, 389] During Mallott's consultative psychological examination, Mary Allen Genthner, M.S., noted that his posture and gait were normal and did not report the use of any assistive device. [*Id*., p. 375] In September 2010, Mallott reported that he did not use any assistive device [*Id*., p. 401] Further, on February 23, 2012, Dr. Anthony J. McEldowney stated that Mallott could ambulate without an assistive device, did not exhibit an antalgic gait, and could walk on his toes and heels. [*Id*., pp. 422-24] Although Mallott later reported that he used a cane, it was never prescribed by a doctor. Further, there is no evidence of the use of two canes or any other device as required by the listing. [*Id*., p. 202] Less than a month after reporting using a cane, Mallott stated that he was moving furniture and lifting boxes. [*Id*., pp. 15, 410] Dr. Lauren Larson examined Mallott on August 12, 2011, and indicated that she had a "long discussion regarding [the] need to return to a job," recommended that Mallott return to work, and did not mention any problems with ambulation. [*Id*., p. 455]

ALJ Reynolds did not err in conclude that Mallott could effectively ambulate. Ineffective ambulation is generally shown by lower extremity functioning so poorly that both upper extremities are needed to aide in moving. *Jackson v. Comm'r of Soc. Sec.*, No. 07-14184, 2009 WL 612343, at *3 (E.D. Mich. Mar. 6, 2009). While Mallott did exhibit an antalgic gait on occasions, he was never found to be so limited that the use of an assistive device was recommended by any physician. Mallott's antalgic gait was not consistently mentioned in the record and his daily activities demonstrate that he was not severely limited in his functioning by his gait, as required by the regulations. 20 C.F.R. pt. 404, subpt. P, app. 1, table 1, § 1.00(B)(2)(b). The ALJ noted that Mallott can feed, bathe, and dress himself, as well as monitor his medication without assistance, do some chores, and help care for a child. [Tr., p. 17] Substantial evidence supported ALJ Reynolds' conclusion that Mallott could effectively ambulate and did not meet the requirements for Listing 1.00(B)(2)(b).

### B.  Credibility

Mallott argues that the ALJ improperly failed to consider medical evidence and his treatment history and made the credibility determination solely based on Mallott's demeanor at the administrative hearing. The ALJ is required to evaluate the credibility of a claimant's statements concerning his symptoms by comparing them to other evidence in the record. 20 C.F.R. § 404.1529(a), (c). Further, an ALJ's credibility assessment is entitled to deference because the ALJ is in a unique position to "observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). However, if the ALJ "rejects a claimant's testimony as

incredible, he must clearly state his reasons for doing so." *Felisky v. Brown*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's credibility determination must not be based only on "intangible or intuitive notion[s] about the individual's credibility." SSR 96-7p, 1996 WL 374186, at *4. Rather, credibility determinations must be supported by the record. *Rogers*, 486 F.3d at 247.

Here, the ALJ stated that he considered the objective evidence along with subjective factors and found that Mallott's allegations were not fully credibile. [Tr., p. 20] Along with these considerations, ALJ Reynolds noted Mallott's appearance and demeanor at the hearing, his history of treatment, and his daily activities. [*Id*.] The ALJ also properly considered the objective medical evidence when making his credibility determination. 20 C.F.R. § 404.1529(c)(2). For example, he noted that while Mallott complained of severe leg and back pain, x-rays performed on September 28, 2010, did not show any lumbar spine abnormalities. [Tr., pp. 15, 332] The ALJ also mentioned that an MRI performed in March 2012, showed only mild spinal issues. [*Id*., pp. 16, 333-34] This type of objective medical evidence is appropriate to consider when determining a claimant's credibility. *Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 686 (6th Cir. 2011) (holding that x-rays demonstrating no abnormalities and an MRI only revealing mild bulges supported the ALJ's finding that the claimant's alleged back pain was not disabling). In short, the ALJ properly weighed the objective medical evidence when making his credibility determination.

The ALJ also properly considered statements from medical sources when making his credibility finding. 20 C.F.R. § 404.1529(c)(3). As discussed above, Dr. Troutt noted several times over the course of his treatment that Mallott's strength was normal. [Tr., pp. 278, 382,

383, 389] Further, Dr. Larson opined that she had a "long discussion regarding [Mallott's] need to return to a job" and stated that Mallott should return to work. [*Id*., p. 455] The ALJ properly considered these statements in rendering his decision. [*Id*., pp. 15-16]

ALJ Reynolds also determined that Mallott's complaints of pain and the severity of his symptoms were not consistent with his activities of daily living. [*Id*., p. 20] Indeed, Mallott complained of having constant pain that prevented him from working and going to church. [*Id*., pp. 226, 228] However, at the time of the administrative hearing, Mallott testified that he was currently attending church three times a week. [*Id*., p. 34] Further, the Claimant testified that he had been moving boxes and furniture and did a lot of pushing, pulling, and lifting. [*Id*., pp. 15, 410] The ALJ also took note of the fact that Mallott can feed, bathe, dress himself, and monitor his medication as well as perform some household chores and help provide childcare. [*Id*., p. 17]

Mallott argues that ALJ Reynolds failed to consider his course of treatment for his alleged disability. [Record No. 9-1, p. 10] He claims that he has attempted to use injections, physical therapy, medication, and heating pads to alleviate his symptoms. [*Id*.] The ALJ did note Mallott's treatment but found that it was conservative and, therefore, undermined his credibility. [Tr., p. 20] Consistent with the ALJ's consideration of Mallott's treatment history, Dr. Larson did not recommend surgery and stated that he needed to return to a job. [*Id*., p. 455] The contradictory evidence of treatment will not render the ALJ's credibility determination erroneous, especially considering the ALJ's analysis of the entire record rather than just Mallott's treatment history.

Mallott's assertion that ALJ Reynolds improperly relied on his demeanor at the hearing is similarly unavailing. Mallott is correct that an ALJ may not rely *solely* on a claimant's demeanor when making a credibility determination. [Record No. 9-1, p. 10 (citing *Martin v. Sec'y of Health & Human Servs.*, 735 F.2d 1008, 1010 (6th Cir. 1984))] However, while the ALJ considered this evidence, it was not the only factor the ALJ used to make his credibility determination. [Tr., p. 20] Because Mallott's demeanor was not the sole factor the ALJ utilized in determining his credibility, the ALJ's consideration of this factor was proper in rendering his credibility determination. After considering the objective medical evidence, statements of physicians, Mallott's daily activities, treatment history, and demeanor, the ALJ found that Mallott's allegations were not fully credible. His decision is supported by substantial evidence and is not erroneous.

**C.  RFC**

Next, Mallott argues that ALJ erred in determining his RFC. [Record No. 9-1, p. 11] Mallott claims that the ALJ failed to cite any medical evidence in determining that he could lift twenty-five pounds occasionally and ten pounds frequently. [*Id.*] The RFC determination is to be made by the ALJ. 20 C.F.R. § 404.1546(c). In fact, "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of the claimant's residual functional capacity." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (internal quotation marks and citation omitted).

While the ALJ did not explicitly cite any medical sources during his analysis of Mallott's RFC, he did analyze the medical opinions earlier in his decision. [Tr., pp. 15-16] In that

analysis, ALJ Reynolds found that Dr. Troutt stated that Mallott had normal strength. [*Id*.] The ALJ also noted that x-rays and an MRI made no more than mild or minimal findings and he considered Mallott's relatively conservative treatment history. [*Id*.] Further, as discussed above, the ALJ found that Mallott's allegations were not fully credible after considering the objective evidence and several subjective factors. [*Id*., p. 20] This determination included Mallott's ability to move furniture and boxes and Dr. Larson's statement that Mallott needed to return to work. [*Id*.] Additionally, Dr. Reed found that Mallott could lift up to fifty pounds occasionally and twenty-five pounds frequently. [*Id*., p. 79] The ALJ's RFC determination was even more limited, allowing Mallott to only lift twenty-five pounds occasionally and ten pounds frequently. [*Id*., p. 19] ALJ Reynolds gave the disabling opinion of Dr. McEldowney minimal weight as it was inconsistent with the entire medical record. [*Id*., p. 20] Such inconsistency is a proper consideration when determining the weight to give a physician's opinion. 20 C.F.R. § 404.1527(c).

Analyzing the ALJ's decision as a whole, substantial evidence supported his RFC determination. *Gribbins v. Comm'r Soc. Sec. Admin.*, 37 F. App'x 777, 779 (6th Cir. 2002) (holding that the findings and conclusions of the Commissioner are reviewed in the context of the record as a whole); *see also Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five."). The ALJ is not required to discuss all of the evidence as long as the factual findings show that he implicitly considered the record as a whole. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496,

507-08 (6th Cir. 2006). As discussed above, the ALJ properly reviewed the medical and non-medical evidence and rendered his RFC finding. As this determination is supported by substantial evidence as discussed above, ALJ Reynold's RFC determination was not in error.

Moreover, even if the ALJ did err in not explicitly mentioning all of the evidence considered in determining Mallott's RFC, it would not require remand. *See Rabbers v. Comm'r of Soc. Sec.*, 582 F.2d 647, 654 (6th Cir. 2009) (holding if an agency has failed to adhere to its own procedures, remand for further administrative proceedings is not necessary unless "the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (citations omitted); *see also NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766 (1969) (noting that courts are not required to "convert judicial review of agency action into a ping-pong game" where "remand would be an idle and useless formality").

### D. Hypothetical Question to the VE

Finally, Mallott argues that the ALJ failed to include his moderately limited ability in maintaining concentration, persistence, and pace in his hypothetical to the VE. [Record No. 9-1, pp. 12-15] Mallott further asserts that the ALJ committed reversible error by failing to include the limitation that he can only focus for two hour increments in a workday in his hypothetical.

The VE's testimony relies on the ALJ's assessment of what the claimant "can or cannot do." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Additionally, the ALJ is permitted to rely on the VE's answer to a hypothetical question only to the extent the assumptions included in the hypothetical are supported by substantial evidence. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). The VE's answers to these

questions constitute substantial evidence "only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Id.* However, the ALJ is only required to incorporate limitations in his hypothetical that he finds credible. *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007).

The ALJ asked the VE if work exists for:

> a person of Mr. Mallott's age, education, and experience with the capability to lift and carry up to 10 pounds frequently, 20 pounds occasionally but with no climbing of ropes, ladders or scaffolds, occasional climbing of stairs or ramps, occasional stooping, kneeling, crouching or crawling, occasional use of the right upper extremity for pushing or pulling, no overhead work with the right upper extremity, further requires entry level work with simple repetitive, one, two, three step procedures, no frequent changes in work routines, no requirement for detailed or complex problem solving, independent planning or the setting of goals.

[Tr., pp. 51-52]

The VE testified that such a person would not be able to perform Mallott's past work but would be able to find work as an inspector, tester, sorter, grader, labor or hand packer, and light commercial cleaner. [*Id.*, pp. 52-53] Mallott specifically objects to the fact that the ALJ did not include restrictions concerning his alleged moderate limitations in concentration, persistence, or pace. [Record No. 9-1, p. 13]

Dr. Christi Bruening indicated that Mallott had moderate difficulties in maintaining concentration, persistence, and pace. [Tr., p. 62] She also found that Mallott has the ability to sustain concentration for two hour increments during an eight hour workday. [*Id.*, p. 68] Dr. Douglas Robbins also made similar findings. [*Id.*, pp. 77, 83] Mallott argues that the ALJ's omission of these limitations was erroneous under *Ealy v. Commissioner*, 594 F.3d 504 (6th Cir.

2010). In *Ealy*, the ALJ asked the VE to "assume this person [is] limited to simple repetitive tasks and instructions in a non-public work settings." *Id*. at 516. However, the ALJ in *Ealy* expressly noted that he was adopting the opinion of a state agency psychologist who concluded that Ealy only had the ability to "sustain attention to complete simple repetitive tasks for two-hour segments over an eight-hour day where speed was not critical." *Id*. The Sixth Circuit held that the ALJ's hypothetical to the VE did not accurately describe the claimant's functional restrictions. *Id*.

Mallott argues that the holding in *Ealy* means that limiting a claimant to "simple repetitive tasks" does not adequately account for his moderate difficulties in concentration, pace, and persistence as well as his ability to maintain concentration for two hour segments during an eight hour workday. [Record No. 9-1, p. 14] However, *Ealy* does not mean that finding a claimant limited to "simple repetitive task" is improper. *Ealy* simply reinforced the principle that if the ALJ utilizes a response to a hypothetical, it must describe a claimant accurately. Indeed, numerous courts have refused to apply *Ealy* in the manner Mallott advocates. *See Hunt v. Comm'r of Soc. Sec.*, No. 1:13-CV-145, 2014 WL 345660, at *6 (W.D. Mich. Jan. 30, 2014) (collecting cases); *Oliver v. Colvin*, No. 2:12-CV-480, 2014 WL 710101, at *5 (E.D. Tenn. Feb. 21, 2014); *Shaffer v. Colvin*, No. 2:12-CV-432, 2014 WL 1207534, at *7 (E.D. Tenn. Mar. 24, 2014).

In *Ealy*, the ALJ expressly adopted a specific limitation which he then failed to include in his hypothetical to the VE. Here, there is no such issue because ALJ Reynolds did not expressly adopt the limitations espoused by either Dr. Bruening or Dr. Robbins. Further, the

improper hypothetical in *Ealy* failed to account for speed-based restrictions. *Ealy*, 594 F.3d at 516. Under these facts, no special speed-based restriction was noted by any medical source. The hypothetical question which the ALJ posed to the VE simply asked whether there were jobs which an individual could perform consistent with Mallott's RFC, to which the VE indicated that there were a significant amount of such jobs. As discussed above, the ALJ's RFC determination is supported by substantial evidence and there was nothing improper about the hypothetical question the ALJ posed to the VE.

Mallott also argues that the ALJ committed reversible error by not including his need to take a break every two hours during an eight hour workday. [Record No. 9-1, p. 13] However, this alleged failure does not constitute reversible error. Rather, breaks every two hours are to be expected in most jobs. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013) (citing SSR 96-9p, 61 Fed. Reg. 34478 (July 12, 1996)). Because the breaks that were recommended by Dr. Bruening and Dr. Robbins are assumed in most jobs, any omission on the part of the ALJ in fashioning his hypothetical is harmless. *Id*. (citing *Rabbers*, 582 F.3d at 654). The hypothetical properly included the limitations found in his RFC determination which, as discussed above, was supported by substantial evidence.

## IV.

The ALJ properly found that Mallott could effectively ambulate, did not err in assessing Mallott's credibility, appropriately determined his RFC, and found work that he could perform in reliance on a proper hypothetical posed to the VE. Contrary to Mallott's arguments, the ALJ's decision is supported by substantial evidence. Accordingly, it is hereby

**ORDERED** as follows:

(1) Plaintiff John Raymon Mallott's Motion for Summary Judgment [Record No. 9] is **DENIED**.

(2) Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 10] is **GRANTED**.

(3) The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 9th day of June, 2014.

Signed By:
*Danny C. Reeves* DCR
United States District Judge